**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| LUIS AMBARIO HERNANDEZ,<br>Petitioner,<br>v.<br>TODD BLANCHE, *et al*.,<br>Respondents. | Case No. 2:26-cv-03076-RFB-MDC<br>**ORDER GRANTING WRIT OF HABEAS CORPUS** |

Before the Court is Petitioner Luis Ambario Hernandez's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1-1) (the "Petition"). For the following reasons, the Court grants the Petition.

## I. FILING FEE

As an initial matter, the Court finds good cause to grant Petitioner, an immigration detainee, leave to proceed *in forma pauperis*. Thus, **IT IS HEREBY ORDERED** Petitioner's Motion to Proceed *in forma pauperis* (ECF No. 1) is **GRANTED**.

## II. INTRODUCTION

Petitioner challenges the lawfulness of his ongoing detention at Nevada Southern Detention Center in the custody of Immigration and Customs Enforcement ("ICE"). Federal Respondents represent that Petitioner is detained under 8 U.S.C. § 1226(a). See generally Fed. Resp'ts' Resp. to Order, ECF No. 5 (September 28, 2026) [hereinafter, "Return"]. Broadly speaking, this provision of the Immigration and Nationality Act ("INA") permits Federal Respondents (the "government") to discretionarily detain noncitizens who are present within the interior of the

country. See generally Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026).

Petitioner asserts that his detention violates his substantive and procedural due process rights. See Traverse at 4–12, ECF No. 11 (October 20, 2026) [hereinafter, "Traverse"].[1]

## III. BACKGROUND

Petitioner Ambario Hernandez is a resident of the United States. On August 6, 2026, ICE arrested Petitioner. Upon arrest, ICE served Petitioner with an I-213, record of deportability or inadmissibility, I-200 administrative warrant, I-286 notice of initial custody determination, and I-862, notice to appear. These documents reflect that the Department of Homeland Security ("DHS") has charged Petitioner with being removable under 8 U.S.C. §§ 1182(a)(7)(A)(i)(I), 1182(a)(6)(A)(i), and that Petitioner has been detained pursuant to an ICE officer's custody determination. See Form I-213, ECF No. 5-1, at 3–6, Form I-200, ECF No. 5-1 at 11; Form I-286, ECF No. 5-1 at 2; Form I-862, ECF No. 5-1 at 12–15. As of the filing of this Order, Petitioner has been detained for over two months without a custody redetermination hearing.

Petitioner seeks release from detention because, *inter alia*, Federal Respondents have violated his substantive and procedural due process rights under the Due Process Clause of the Fifth Amendment by failing to provide adequate notice and opportunity to challenge his detention. See Traverse at 5–14. In its return, the government does not assert any specific, individualized justification for Petitioner's detention and concedes that Petitioner can only be detained under 8 U.S.C. § 1226(a). See generally Return.

Federal Respondents' concession comes only after the government's statutory interpretation of 8 U.S.C. § 1225(b)(2)(A) was held unlawful by this Court and the Ninth Circuit. On March 30, 2026, this Court set aside (*i.e.*, vacated) the government's unlawful detention

---

[1] Petitioner also asserts he is entitled to relief under the judgment issued by this Court in Jacobo-Ramirez v. Mullin, 834 F. Supp. 3d 1073 (D. Nev. 2026). Importantly, the class-wide due process claim has not been litigated in Jacobo-Ramirez. See id. at 1085 ("Plaintiffs also claim that the [government's detention] policies . . . violate their due process rights under the Fifth Amendment (Ground IV), but they do not currently seek summary judgment on thi[s] claim[]."). Here, though Petitioner may be entitled to relief on statutory grounds because he was not given a meaningful initial custody determination, the Court finds Petitioner's initial and ongoing detention violates due process and is unconstitutional as applied, see Rodriguez Diaz v. Garland, 53 F. 4th 1189, 1213 (9th Cir. 2022), so it need not reach the class claims.

policies pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). See Jacobo-Ramirez, 834 F. Supp. 3d at 1123.

Those policies were captured in: (i.) an internal ICE memorandum issued on July 8, 2025, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission" ("July 8th Memo"), and (ii.) the Board of Immigration Appeals ("BIA") decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) [hereinafter, "Hurtado"]. See Jacobo-Ramirez, 834 F. Supp. 3d at 1093–95 (discussing the July 8th Memo, which set forth the "formal nationwide policy of DHS and [the Department of Justice]," and Hurtado, in which the Executive Office for Immigration Review ("EOIR")—*i.e.*, the immigration "courts"—formally adopted this policy). In Jacobo-Ramirez, the Court concluded that noncitizens arrested or detained by ICE in the interior of the country, who are in removal proceedings before an immigration court in the District of Nevada, whom are alleged by DHS to have entered the United States without inspection or parole, and are not subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231, are subject only to detention under 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2)(A).

In Rodriguez Vazquez v. Bostock, the Ninth Circuit further rejected the government's erroneous statutory interpretation, holding that unadmitted noncitizens present in the interior of the country may only be detained under 8 U.S.C. § 1226, not § 1225(b)(2)(A). Rodriguez Vazquez, 183 F.4th at 1193. As supportive evidence, the panel cited the government's past thirty years of "unbroken practice[,]" noting that "[o]nly in 2025 did the government change its legal position." Id. at 1190.

As discussed below, the Court finds that Petitioner's arrest and ongoing detention without the government and the BIA—which is still bound by Hurtado—providing explicit notice to Petitioner that it is following the procedures and legal standards required by § 1226(a), violates his constitutional due process rights. The Court further finds the appropriate remedy for Petitioner's unlawful detention is: (i.) immediate release from custody; (ii.) an order requiring Federal Respondents to follow appropriate procedures if they seek to re-detain Petitioner under § 1226(a).

## IV. DISCUSSION

As a threshold matter, noncitizens are entitled to due process under the U.S. Constitution. See, e.g., Escobar Salgado v. Mattos, 809 F. Supp. 3d 1123, 1158–60 (D. Nev. 2025); Jacobo-Ramirez v. Mullin, 817 F. Supp. 3d at 1053–54. The Due Process Clause of the Fifth Amendment protects "every one" of the "millions of [noncitizens] within the jurisdiction of the United States" "from deprivation of life, liberty, or property without due process of law. . . . Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection." Mathews v. Diaz, 426 U.S. 67, 77 (1976) (citations omitted); see also Shaughnessy v. U.S. *ex rel.* Mezei, 345 U.S. 206, 212 (1953) (The Due Process Clause guarantees that noncitizens "who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.") (emphasis added), superseded by statute on other grounds as stated in Dep't of Homeland Sec. v. Thuraissigiam, 345 U.S. 206 (2020); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted) (Noncitizens who have entered our country are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent."). Hence, the Supreme Court has consistently—and repeatedly—held that the Executive Branch cannot "disregard the fundamental principles" of "due process" while interacting with noncitizens who have "entered the country, and [ ] become . . . a part of its population," even those who are allegedly undocumented. See, e.g., Yamataya v. Fisher, 189 U.S. 86, 101 (1903); see also U.S. v. Raya-Vaca, 771 F.3d 1195, 1203 (9th Cir. 2014) ("This long line of precedent admits no exception: [a noncitizen] who has entered the United States is guaranteed due process protections.").

Physical freedom "lies at the heart" of the Due Process Clause—*i.e.*, an individual cannot be deprived of their physical freedom without due process of law. See Zadvydas, 553 U.S. at 690 (citation omitted). Furthermore, "notice and an opportunity to be heard" constitute the "fundamental features of due process[.]" Rodriguez Diaz, 53 F.4th at 1205 (quoting Miranda v. Garland, 34 F.4th 338, 358 (4th Cir. 2022)). Thus, it follows that when the government subjects noncitizens to civil detention without supplying basic, *fundamental*, procedural safeguards, their actions run afoul of the Due Process Clause.

8 U.S.C. § 1226(a) and its implementing regulations set forth a scheme designed to guarantee certain noncitizens "substantial procedural protections" against the erroneous deprivation of their liberty—as recognized by the Ninth Circuit. See Jacobo-Ramirez, 834 F. Supp. 3d at 1075 (quoting Rodriguez Diaz, 53 F.4th at 1196). These protections include, but are not limited to, various procedures such as: (1) service of a notice to appear, which provides critical context as to the basis for detention; (2) any arrest and custody under this provision must be pursuant to a lawfully executed administrative warrant; (3) at the outset of detention, a noncitizen detained under this provision receives an initial custody determination by the agency; and (4) the noncitizen then has an ability to appeal said custody determination—*i.e.*, receive a custody redetermination (bond) hearing before an immigration judge ("IJ"). See Rodriguez Diaz, 53 F.4th at 1201–02 (first, holding the detention scheme set forth in § 1226(a) and its implementing regulations constitutional under the Due Process Clause; second, detailing the numerous levels of review provided by the protections therein, including "the agency's initial custody determination . . . an initial bond hearing before a neutral decisionmaker . . . and the right to seek a new hearing when circumstances materially change"; and finally, stating that § 1226(a)'s procedures stand as a reference point for the due process that should be required under the INA's other detention provisions).

**A. SUBSTANTIVE DUE PROCESS**

Substantive due process protects individuals from government action that interferes with fundamental rights. See Regino v. Staley, 133 F.4th 951, 959–60 (9th Cir. 2025). "Governmental action that infringes a fundamental right is constitutional only if 'the infringement is narrowly tailored to serve a compelling state interest.'" Id. at 960 (quoting Reno v. Flores, 507 U.S. 292, 302 (1993)) (citation omitted). Civil immigration detention violates a noncitizen's substantive due process rights except in certain "special and 'narrow' nonpunitive 'circumstances,' Foucha v. Louisiana, 504 U.S. 71, 80 (1992), where a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" Zadvydas, 533 U.S. at 690 (citation modified) (quoting Kansas v. Hendricks, 521 U.S. 346, 356 (1997 To date, Federal Respondents have failed to assert any specific, individualized justification—let alone any special

or compelling justification—for depriving Petitioner of his freedom. See generally Return. Thus, the Court finds that Petitioner's detention violates substantive due process and is therefore unconstitutional. Cf. Escobar Salgado, 809 F. Supp. 3d at 1162.

**B. PROCEDURAL DUE PROCESS**

The Fifth Amendment imposes procedural "constraints on government decisions which deprive individuals of" their liberty. Mathews v. Eldridge, 424 U.S. 319, 332 (1976). The specific demands of due process are flexible. See Morrissey v. Brewer, 408 U.S. 471, 481 (1972). To determine them, courts consider three distinct factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." Mathews, 424 U.S. at 335 (citation omitted); see also Rodriguez Diaz, 53 F.4th at 1203–1207 (reaffirming that the Mathews test is appropriate in the context of immigration detention). After carefully balancing these factors, the Court concludes that they weigh in favor of Petitioner, such that Petitioner's ongoing detention has not—and cannot—satisfy the procedural demands of due process.

Noncitizens detained under § 1226(a) and its implementing regulations are entitled to the full suite of procedures described therein as a matter of statute and due process. See Rodriguez Vazquez, 183 F. 4th at 1193. Most importantly, this suite of procedures was well-established and known to the public. That is not the case here. The Court first describes the procedures meant to be afforded to Petitioner and thereafter considers the factors bearing upon the constitutional adequacy of the application of these procedures. See Mathews, 424 U.S. at 335.

**i. *8 U.S.C. § 1226(a)'s Pre-Detention Scheme***

Under 8 U.S.C. § 1226(a)'s regulatory scheme, the government must abide by numerous levels of process in arresting and detaining a noncitizen. First, a noncitizen cannot be detained without notice of the basis of their detention *vis-à-vis* a notice to appear ("NTA"), which must also be signed and served by a designated immigration officer. See 8 U.S.C. § 1229(a)(1); 8 C.F.R.

§§ 239.1, 1003.15(b)(1). Per the governing regulations, which have been codified into statute at 8 U.S.C. § 1229(a)(1), the NTA must include, *inter alia*, the following information: "(1) [t]he nature of the proceedings against the [noncitizen]; (2) [t]he legal authority under which the proceedings are conducted; (3) [t]he acts of conduct alleged to be in violation of law; (4) [t]he changes against the [noncitizen] and the statutory provisions alleged to have been violated." 8 C.F.R. §§ 1003.15(b)(1)–(4); 8 U.S.C. § 1229(a)(1).

Second, a noncitizen who falls within the § 1226(a) statutory scheme cannot be arrested and taken into ICE custody without an administrative warrant,[2] which must be issued, signed, and served by a designated immigration officer simultaneous to, or after, the issuance of an NTA. See 8 C.F.R. §§ 236.1(b); 287.5(c), (e)(2), (e)(3); 287.8(c).

Third, "[w]hen a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination," wherein the noncitizen has a *pre-deprivation* opportunity to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding," such that they can be released on bond and/or supervisory conditions, rather than detained while their removability is adjudicated. Rodriguez Diaz, 53 F.4th at 1196; 8 C.F.R. §§ 236.1(c)(8), (g).

Fourth, a noncitizen has the right to appeal an ICE officer's custody determination through a prompt hearing before an IJ based on individualized evidence, wherein the IJ will order release on bond and/or conditions if the noncitizen establishes that they are not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." Rodriguez Diaz, 53 F.4th at 1197 (citation and internal quotation marks omitted); see also 8 C.F.R. §§ 236.1(d)(1), 1003.19. At this hearing, the noncitizen bears the evidentiary burden of

[2] This Court previously explained the limited exceptions to this requirement as follows:

> Immigration officers are authorized to make warrantless arrests in *limited circumstances* under the INA. These include when a noncitizen is "entering or attempting to enter the United States in violation of any law or regulation . . . regulating the admission, exclusion, expulsion, or removal of [noncitizens]," or when an officer has reason to believe (i.) the noncitizen is in the United States in violation of such laws or regulations and (ii.) the noncitizen is likely to "escape" before an arrest warrant can be obtained. 8 U.S.C. § 1357(a)(2); see also 8 U.S.C. §§ 1357(a)(4)-(5) (providing other circumstances that justify warrantless arrest).

Djiwaje v. Bondi, No. 2:26-cv-00344-RFB-MDC, 2026 WL 926753, at *2 (D. Nev. Apr. 6, 2026) (emphasis added).

overcoming the presumption of detention. See In re Guerra, 24 I&N Dec. 37, 38 (BIA 2006) (allocating the evidentiary burden to disprove dangerousness or flight risk at a bond hearing before an IJ); In Re Adeniji, 22 I. & N. Dec. 1102 (BIA 1999) (same). That is why, when a noncitizen seeks to challenge their detention through a custody *redetermination* hearing (*i.e.*, a bond hearing), the noncitizen has already been provided notice of the legal bases—*at minimum*—underlying the government's custody determination, such that the hearing presents an opportunity to disprove and rebut the agency's determination. See 8 C.F.R. § 236.1(d) (delegating authority to IJs to hear "*[a]ppeals* from custody decisions" upon an application by the detainee "*[a]fter* an initial custody determination" by a designated officer) (emphasis added); see also Mathews, 424 U.S. at 345–46.

Finally, and most importantly, a noncitizen, prior to Hurtado, could appeal the denial of bond and/or the failure to follow the required procedures or legal standards by immigration officials—including immigration judges—to the BIA. This final appeal was, and is, crucial to a noncitizen being able to correct a spectrum of procedural errors: from the most basic (*e.g.*, wrongful identification) to the most complex (*e.g.*, the misapplication of legal standards by an immigration judge). And the BIA, through its decisions, set forth and reinforced the required procedures and proper application of legal standards. See, e.g., Matter of Urena, 25 I&N Dec. 140, 141–42 (setting forth the standard in custody redetermination proceedings and remanding record for immigration judge "to clarify his determination"). The BIA is meant to function as a quasi-neutral decisionmaker, whose decisions regarding custody are subject to further review only for abuse of discretion. See Martinez v. Clark, 124 F.4th 775, 784–85 (9th Cir. 2024).

Taken together, these procedures ensure that the government has a factual and legal basis for determining that a resident noncitizen's pre-removal detention is necessary; simultaneously, they guarantee that the noncitizen has notice of said basis for their detention and an opportunity to be heard in rebuttal, as well as further review by a neutral decisionmaker. See Rodriguez Diaz, 53 F.4th at 1210 ("These procedures ensure[] that the risk of an erroneous deprivation would be relatively small.") (citation and quotation marks omitted). Prior to Hurtado, these procedures and the respective legal standards were clearly set forth.

Based on the evidence presented by the parties, and in light of the government's arbitrary

policy changes, the Court finds that Petitioner was not afforded adequate procedural protections as a matter of due process.

**ii. *Private Interest***

First, the government is depriving Petitioner of his paramount interest in his own physical liberty. See Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004) (citation omitted) ("[T]he interest in being free from physical detention by one's own government" "is the most elemental of liberty interests."). As this Court has held, Petitioner is independently entitled to each of the procedures set forth in § 1226(a) and its implementing regulations. These procedures were specifically designed to protect the liberty interests of certain noncitizens, while preserving agency discretion. As a result, noncitizens that should be subject to § 1226(a) and its accompanying procedures have a liberty interest in the government *following those procedures*. See Trinidad y Garcia v. Thomas, 683 F.3d 952, 956–57 (9th Cir. 2012) (finding that the detailed statutory scheme surrounding extradition has "generate[d] interests cognizable as liberty interests under the Due Process Clause" and an extraditee's "liberty interest under the federal statute and federal regulations entitles him to strict compliance by the Secretary of State with the procedure outlined in the regulations"); Morton v. Ruiz, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.").

This interest is especially weighty here, considering the lack of meaningful process that was available to Petitioner when he was detained. See Rodriguez Diaz, 53 F.4th at 1208 ("[I]n evaluating [a noncitizen's] interests under the first prong of [ ] Mathews, . . . [courts] must also consider the process [they] received . . . [and] the further process that was available to [them] . . . ."). Federal Respondents have not provided any evidence that Petitioner had a meaningful opportunity to demonstrate that he was not a flight risk nor a danger to the community at the agency's initial custody determination. See Traverse at 6–11. Petitioner was not served with any documentation laying out the factual and legal bases for his detention, and thus also had no meaningful opportunity to challenge his detention. In fact, despite Petitioner's request, there is no evidence that Petitioner has received a constitutionally adequate custody redetermination.

In any case, Petitioner's interest in his own freedom is not diminished by the fact that he

could be supplied with a post-deprivation bond hearing. Where physical liberty is at stake, pre-deprivation process is necessary, and the lack of such process cannot be cured by the government's ability to conduct a post-hoc bond hearing. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'") (emphasis added) (quoting Mullane v. Central Hanover Bank & Tr. Co., 339 U.S. 306, 313 (1950)); see also Goldberg v. Kelly, 397 U.S. 254, 267–68 (1970) (describing how due process principles require "timely and adequate notice detailing the reasons for a proposed termination" prior to a pre-termination hearing). Rather, as explained *infra*, the deficient process afforded to Petitioner renders his detention unconstitutional and void *ab initio*; a legally untethered hearing is insufficient to cure Respondents' violations of Petitioner's due process rights.

**iii. *Risk of Erroneous Deprivation***

Given the shifting nature of the government's immigration policy, the procedures afforded to Petitioner do not adequately protect against the intolerably high risk of an erroneous deprivation of liberty. While the government does not need to "undertake every possible effort to mitigate the risk of erroneous deprivation and the potential harm to the private party[,]. . . the Constitution does require that the government take reasonable measures to ensure basic fairness to the private party and that the government follow procedures reasonably designed to protect against erroneous deprivation of the private party's interests." Kashem v. Barr, 941 F.3d 358, 379 (9th Cir. 2019).

Prior to July of 2025, for thirty years, the government provided certain noncitizens detained in the interior of the country—like Petitioner—notice and opportunity to challenge their detention. See Rodriguez Vazquez, 183 F.4th at 1190. Noncitizens were on notice of the overall process and required procedures, including applicable legal standards, which were set forth and reinforced in various respective statutes, regulations and precedential court decisions. See id. at 1167 (citing 8 U.S.C. § 1226(a)(2); 8 C.F.R. §§ 1003.19, 1236.1; 8 C.F.R. §§ 236.1(c)(8), (d), 1236.1(d)(1), (3), 1003.19). Specifically, that process entailed "an ICE officer [making] an individualized custody determination . . . evaluating [the noncitizen's] likelihood of appearing for any future proceedings and potential danger to property or persons." Rodriguez Diaz, 53 F.4th at 1209. This determination

and the application of the relevant procedures to a specific noncitizen were subject to review by immigration judges. And, the immigration judges' decisions were subject to review and correction by the BIA. The standards that applied at each level of review were known and affirmed by the Ninth Circuit. Thus, the Ninth Circuit upheld this process as constitutional because "the agency's decision to detain . . . was subject to numerous levels of review, each offering . . . the opportunity to be heard by a neutral decisionmaker." Id. as 1210.

However, beginning in July of 2025, through internal guidance, the government changed its policies and began subjecting noncitizens entitled to 8 U.S.C. § 1226(a)'s procedures to mandatory detention under § 1226(b)(2)(A).

Shortly after this change, in September 2025, the BIA formally adopted the government's erroneous interpretation of 8 U.S.C. § 1225(b)(2)(A) and further found in a *precedential* opinion[3] that immigration judges had no jurisdiction to hear bond requests from noncitizens purportedly detained under § 1225(b)(2)(A). See generally Hurtado. To date, the BIA has not overturned Hurtado but rather affirmed it. See Matter of N-A-G-C-, 29 I&N Dec. 662, 663 & n. 1 (concluding that Hurtado "controls the outcome of the present case" despite the BIA's "aware[ness]" of a federal district court's vacatur of Hurtado).

Most importantly, the BIA's failure to overturn or reverse Hurtado means that noncitizens like Petitioner do not have any meaningful opportunity to address legal or factual infirmities in their arrest, detention, and immigration court hearings. As the fundamental finding in Hurtado is that the immigration judges "lacked jurisdiction" to determine bond under the government's erroneous statutory interpretation, detained noncitizens like petitioner have no avenue to any legal or factual errors. Hurtado, 29 I&N Dec. at 229 n. 8. To the extent some procedures have been followed, it is unclear which statutory provision government officials are relying upon for applying such procedures. The BIA is still bound by—and following—Hurtado, and per its own decision, cannot legally address errors in any given custody redetermination hearing for noncitizens arrested in the interior of the country. Indeed, because the BIA's current position is that immigration

[3] By majority vote of the permanent Board members, or as directed by the Attorney General or his designee, selected decisions of the Board issued by a three-member panel or by the Board *en banc* may be designated to be published and to serve as precedents in all proceedings involving the same issue or issues. 8 C.F.R. § 1003.1(g)(3).

officials need not apply the correct detention authority, and that immigration judges do not have authority to grant bond for noncitizens like Petitioner, there currently exists no opportunity for review by a neutral factfinder.

In short, the landscape has changed after Rodriguez Diaz. Indeed, after thirty years of practice, the government circulated—through internal guidance—a new detention policy based on an erroneous statutory interpretation, which the BIA rubberstamped, ultimately depriving countless noncitizens of due process.[4] Given the arbitrary and surreptitious nature of the government's changes in immigration policy, cf. Ruiz, 415 U.S. at 232 (noting the "inherently arbitrary nature of unpublished ad hoc determinations"), and the BIA's demonstrated unwillingness to function as a neutral decisionmaker, the Court finds that the process afforded to Petitioner is insufficient.

Indeed, since July 2025, the government has not provided noncitizen detainees with any notice of the changed legal bases for detention, the factual bases for detention, nor the standards that govern custody redetermination hearings. In this case, as explained above, Petitioner was neither given an opportunity to demonstrate why he should not be detained, nor was Petitioner provided with notice of the factual and legal bases for his detention.

The agency's "initial custody determination" is memorialized in the Form I-286. See Form I-286, ECF No. 5-1 at 2 [hereinafter, "Form I-286"]; 8 C.F.R. § 236.1(c)(8). That one-page form reads:

"Pursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations, I [the agency officer] have determined that,

---

[4] After Hurtado, the BIA routinely sustained DHS appeals to reverse an immigration judge's bond determination, and/or affirmed immigration judges' decisions denying bond for lack of jurisdiction. See, e.g., Rodriguez v. Mattos, No. 2:26CV00316-RFB-EJY, 2026 WL 579412, at *1 (D. Nev. Mar. 2, 2026) (Petitioner's "original bond decision was declared 'superseded' for lack of jurisdiction by the IJ, based on a finding that they were bound to follow the BIA's precedential decision in Hurtado"); Kalayci v. Warden, Otay Mesa Det. Ctr., No. 26-CV-642-BJC-BJW, 2026 WL 2076367, at *1 (S.D. Cal. July 17, 2026) (Petitioner was granted bond, but the bond order was "vacated on jurisdictional grounds" pursuant to Hurtado); Torres v. Bondi, No. 25-CV-02457-BAS-MSB, 2025 WL 3214773, at *1 (S.D. Cal. Nov. 18, 2025) (same); Calel v. LaRose, No. 3:25-CV-02883-GPC-JLB, 2025 WL 3171898, at *1 (S.D. Cal. Nov. 13, 2025) (same); Zaragoza v. Noem, No. 5:25-CV-02925-HDV-PVC, 2025 WL 4058568, at *1 n.1 (C.D. Cal. Nov. 7, 2025) (same); Garcia Magadan v. Noem, No. 3:25-CV-2889-JES-KSC, 2025 WL 3090089, at *1 (S.D. Cal. Nov. 5, 2025) (same); Rodriguez v. Mattos, No. 2:26CV00316-RFB-EJY, 2026 WL 579412, at *1 (D. Nev. Mar. 2, 2026) (same). A federal court in this circuit later vacated Hurtado. See Maldonado Bautista v. Noem, 820 F. Supp. 3d 1016 (C.D. Cal. 2026).

pending a final administrative determination in your case, you will be:

[ ] Detained by the Department of Homeland Security.

[ ] Released . . .

You may request a review of this custody determination by an immigration judge.

[ ] I acknowledge receipt of this notification, and

[ ] I do request an immigration judge review of this custody determination.

[ ] I do not request an immigration judge review of this custody determination."

Form I-286. The form also indicates when the initial custody determination was conducted, and by whom, as well as when the noncitizen was served with the form. Notably absent from the form is any mention of the factual bases for detention—*i.e.*, the reasons why the officer purportedly classified Petitioner as a flight risk and/or danger to the community.[5] See Traverse at 6–11.

When a noncitizen is served with a Form I-286, and they do check the box seeking immigration judge review, a custody redetermination hearing is presumably scheduled. However, a noncitizen detainee like Petitioner is not given any notice of what standards govern that hearing, nor what evidence is permitted at that hearing. In fact, without notice of the factual bases for detention, Petitioner does not even have notice of the determination they are contesting. Yet, at the custody redetermination hearing, it is the noncitizen, not the government, who bears the burden to overcome the agency's initial custody determination by a preponderance of the evidence. See Matter of Guerra, 24 I&N Dec. 37 (BIA 2006).

This process does not afford noncitizens adequate notice and opportunity to be heard. Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. In the § 1226(a) detention context, it is especially imperative that individuals, who have resided in the country for many years, receive the factual bases for their detention prior to the deprivation of their liberty. Cf. Hamdi, 542 U.S. at 533 (holding that "a citizen-detainee

[5] To the extent that the Form I-286 notifies a noncitizen that they are inadmissible, that alone does not constitute sufficient notice as to the bases for *detention*, which can only be that the noncitizen poses a flight risk or a danger to the community. See Zadvydas v. Davis, 533 U.S. 691–92 (2001); Singh v. Holder, 638 F.3d 1196, 1205 (9th Cir. 2011).

seeking to challenge his classification as an enemy combatant must receive notice of the factual basis for his classification, and a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker. . . . It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner. . . . These essential constitutional promises may not be eroded.”) (internal quotation marks and citations omitted).

As explained above, the Court finds that Petitioner was not given any opportunity to be heard by the officer making the initial custody determination. See Traverse at 8. Further, the Form I-286, the only documentation of this alleged determination, does not provide any evidence or reasoning for the officer’s custody determination. And, given the uncertainty of the government’s detention policy at any given time, due process requires that a noncitizen detainee understand the reasons for their detention, as well as the standards that apply to any subsequent review. Upon this record, the Court finds Respondents’ cursory service of the Form I-286 inadequate as a matter of due process, and any subsequent custody “redetermination” where Petitioner was not sufficiently apprised of the bases for detention could not comport with constitutional demands. As a result, Petitioner has been subjected to months of detention without adequate procedural protections. See also Sandoval Audeves v. Blanche, No. 2:26-CV-02063-MMD-MDC, 2026 WL 3026502, at *1–4 (D. Nev. Oct. 8, 2026).

Because Petitioner has not been afforded meaningful notice and an opportunity to be heard, he faces an excessive risk of erroneous deprivation.

**iv. *Government’s Interest***

Third, the government’s interest in enforcing immigration law, and presumed interest in detaining noncitizens who are dangerous and/or a flight risk, are served, and not unduly burdened, by the longstanding procedural protections that were typically afforded to noncitizens like Petitioner. See Escobar Salgado, 809 F. Supp. 3d at 1161–62. The procedural requirements of § 1226(a) *reduce* the fiscal and administrative burden of civil immigration detention by limiting detention to noncitizens who are actually dangerous or a flight risk. See id. at 1162 (“[T]he Court finds that limiting the use of detention to only those noncitizens who are dangerous or a flight risk

through existing [ ] procedures serves the government's and public's interest by *reducing* the fiscal and administrative burdens attendant to immigration detention."); see also Jacobo-Ramirez II, 2026 WL 879799, at *30 ("Recent estimates by the federal government find that supervised release programs such as those available under § 1226 cost less than $4.20 each day per participant, compared with detention costs of $152 per day.") (citation omitted). Similarly, the public interest is served by the procedures under § 1226(a), as these limit the "substantial societal costs" that "unnecessary detention imposes" by "separat[ing] families and remov[ing] from the community breadwinners, caregivers, parents, siblings[,] and employees." Hernandez-Lara v. Lyons, 10 F.4th 19, 33 (1st Cir. 2021) (citation omitted).

## V. REMEDY

Based on the record before it, the Court finds that Petitioner has been subjected to months of arbitrary detention in violation of his constitutional rights. Thus, the Court's task is to determine the appropriate remedy for these violations. See Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) (citation omitted) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief. . . . The court is free to fashion to the remedy as law and justice require . . . ."); Brown v. Davenport, 596 U.S. 118, 132 (2022) (quoting 28 U.S.C. § 2243) (same). For the following reasons, the Court finds that immediate release is the appropriate equitable remedy in this case.

As previously stated, the Court finds that Respondents' ongoing detention of Petitioner violates his substantive and procedural due process rights. Additionally, a subsequent bond hearing "is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip" Petitioner of his freedom. See Lopez Benitez, 795 F. Supp. 3d at 497 (citations omitted). Immediate release is thus the appropriate remedy for Federal Respondents' "detain first, justify later" approach to Petitioner's liberty, which mangles § 1226(a)'s regulatory framework and the basic demands of due process.

Undeterred, the government has only doubled down on its unlawful course of conduct; indeed, Respondents have declined to take any steps to remedy Petitioner's illegal detention.

Despite Petitioner's request for a custody redetermination by an immigration judge, such an opportunity has not been afforded to him.

In fashioning this remedy, the Court is cognizant of Federal Respondents' broader indifference toward the rule of law. To elaborate, Federal Respondents have previously engaged in a systemic pattern of noncompliance with this Court's orders in related habeas matters. These violations include, *inter alia*: removing petitioners from the District of Nevada; failing to release petitioners as ordered; disregarding deadlines; failing to provide constitutionally adequate bond hearings; and imposing unlawful release conditions. See, e.g., Jimenez Gomez v. Dep't of Homeland Sec., No. 2:26-cv-00922-RFB-DJA, 2026 WL 1164736, at *2–3 (D. Nev. Apr. 29, 2026) (collecting examples).[6] Of course, Respondents' folly is not without consequences. "By violating this Court's orders, Respondents are undermining their credibility and the rule of law. Their conduct also causes unnecessary trauma and harm to petitioners" and squanders this Court's finite resources. Id.

For all these reasons, the Court will not ratify the government's lawless conduct by ordering a bond hearing for Petitioner. While ordering a bond hearing at which the government bears the evidentiary burden by clear and convincing evidence may be an appropriate remedy in some cases, under these circumstances, the Court declines to prolong Petitioner's unlawful

[6] Since the Court's decision in Jimenez Gomez, the Court has become aware of numerous other instances of Federal Respondents violating this Court's explicit orders. See, e.g., Order Granting Mot. to Extend & Directing Pet'r's Return to this Dist. at 1–2, Sira v. Bondi, Case No. 2:26-cv-00828-RFB-DJA (D. Nev. Apr. 21, 2026) (ECF No. 8) (finding that the government transferred Mr. Sira beyond this judicial district in violation of a court order); Order Directing Pet'r's Return to this Dist. at 2, Cortez Diaz v. Blanche, 2:26-cv-01056-JAD-NJK (D. Nev. Apr. 29, 2026) (ECF No. 10) (same); Min. Order, Yanes-Quijada v. Mattos, Case No. 2:26-cv-01221-RFB-NJK (D. Nev. May 7, 2026) (ECF No. 16) (finding that the government: (i.) failed to certify a lawful basis for Mr. Yanes-Quijada's detention in response to an order to show cause and (ii.) failed to comply with a document production order); Diaz v. Mattos, No. 2:26-cv-00926-RFB-BNW, 2026 WL 1270816, at *6 (D. Nev. May 9, 2026) (finding that Mr. Diaz remained in detention in violation of the Court's Order); Order Enforcing Writ of Habeas Corpus at 10–11, Cruz Perez v. Blanche, No. 2:26-cv-00315-RFB-DJA (D. Nev. May 15, 2026) (finding that an IJ failed to apply the appropriate evidentiary burden at a court-ordered bond hearing in violation of the Court's conditional writ); Order Enforcing Writ of Habeas Corpus at 2–4, Malta De Sa v. Noem, No. 2:26-cv-00594-RFB-MDC (D. Nev. May 19, 2026) (ECF No. 25) (finding that the government unilaterally imposed burdensome release conditions on Mr. Malta De Sa, in spite of this Court's explicit order prohibiting them from doing so); Alfaro Cruz v. Bernacke, No. 2:26-cv-00080-RFB-BNW, 2026 WL 1414096, at *3–4 (D. Nev. May 20, 2026) (finding that the government "obviously failed to comply with this Court's conditional writ" because it improperly placed the burden of proof on Mr. Alfaro Cruz); Status Report at 2, Bibiano v. Blanche, 2:26-cv-00927-RFB-BNW (D. Nev. May 25, 2026) (ECF No. 19) (footnote omitted) ("Federal Respondents have repeatedly violated court orders in this district requiring them to provide advanced notice of release to counsel."); Min. Order, Changyi v. Leyva, 2:26-cv-01280-RFB-MDC (D. Nev. June 3, 2026) (ECF No. 18) (conceding "Pursuant to this Court's [ ] Order, Respondents were ordered to immediately release Petition . . . . If Petitioner remains in detention, Respondents are in violation of this Court's Order."). Unfortunately, this list is far from exhaustive.

detention any further. Ordering a bond hearing here "would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications," such that it would not remedy the harms Petitioner has suffered. Zheng v. Rokosky, 826 F. Supp. 3d 545, 563 (D.N.J. 2026); see also, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (citation omitted) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."). Moreover, ordering a bond hearing would provide Federal Respondents with yet another opportunity to violate this Court's orders and due process.[7]

The Court thus finds "the typical remedy" for "unlawful executive detention"—immediate release from custody—is appropriate here. See Munaf v. Geren, 553 U.S. 674, 693 (2008). Additionally, the Court finds that it must adopt equitable remedies to ensure that Federal Respondents abide by due process moving forward. Cf. U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, given Respondents' failure to provide Petitioner a meaningful opportunity to be heard prior to his detention, the Court finds it appropriate to require that, in the event DHS seeks to re-detain Petitioner under § 1226(a), Federal Respondents must provide him with *a pre-deprivation* hearing wherein the government must prove, by clear and convincing evidence, that detention is appropriate. See Martinez, 124 F.4th at 784 (citation omitted) (reviewing EOIR's compliance with a district court's conditional writ, which ordered EOIR to conduct a bond hearing—as a matter of due process—where the government was required to "show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community."); Gonzalez-Juarez v. Bondi, 137 F.4th 996, 1003 (9th Cir. 2025) (describing

---

[7] In related habeas matters where the Court has issued a conditional writ, which afforded Federal Respondents an opportunity to cure a petitioner's unlawful detention through a constitutionally adequate bond hearing, Federal Respondents have repeatedly defied the dictates of those orders, requiring post-judgment enforcement. See, e.g., Diaz v. Mattos, No. 2:26-cv-00926-RFB-BNW, 2026 WL 1270816, at *6 (D. Nev. May 9, 2026); Order Enforcing Writ of Habeas Corpus at 10–11, Cruz Perez v. Blanche, No. 2:26-cv-00315-RFB-DJA (D. Nev. May 15, 2026) (ECF No. 31); Salazar-Lopez v. Mullin, No. 2:26-cv-00871-RFB-MDC, 2026 WL 1414066, at *3 (D. Nev. May 20, 2026); Alfaro Cruz v. Bernacke, No. 2:26-cv-00080-RFB-BNW, 2026 WL 1414096, at *4 (D. Nev. May 20, 2026).

Martinez). While the Court does not take this step lightly, it finds it is necessary because of Federal Respondents' egregious violations of the law and Petitioner's rights to date.

## VI. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1-1) is **GRANTED**.

**IT IS FURTHER ORDERED** Respondents must **RELEASE** Petitioner from detention on his personal recognizance on **October 22, 2026**, between the hours of **12:00 P.M. and 3:00 P.M.** Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window and make reasonable arrangements for Petitioner's departure from the facility.

**IT IS FURTHER ORDERED** Respondents must return Petitioner's personal property, including any personal identification and employment authorization documents, **UPON HIS RELEASE.** If Federal Respondents fail to do so, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** Respondents may not re-detain Petitioner during the pendency of his current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under the INA and its implementing regulations. To the extent the government seeks to detain Petitioner under 8 U.S.C. § 1226(a), it bears the burden of establishing that detention is appropriate by clear and convincing evidence.

**IT IS FURTHER ORDERED** the Parties must file a **JOINT STATUS REPORT** by **October 23, 2026** confirming Respondents' compliance with this Order, including: (i) the date and time of Petitioner's release; (ii) compliance with this Court's directives concerning release on personal recognizance; and (iii) the return of Petitioner's personal property.

///

///

///

///

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** October 21, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**